**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

IN RE:

| | |
|---|---|
| **KENNETH RAY ANDERSON and** | **CASE NO. 13-60469** |
| **LINDA CAROL ANDERSON** | **CHAPTER 7** |
| **DEBTORS** | |
| **JAMES FISHER SR. and** | **PLAINTIFFS** |
| **RUBY FISHER** | |
| **V.** | **ADV. NO. 13-06021** |
| **KENNETH RAY ANDERSON and** | **DEFENDANTS** |
| **LINDA CAROL ANDERSON** | |

**MEMORANDUM OPINION**

The Plaintiffs, James Fisher Sr. and Ruby Fisher, filed this adversary proceeding [AP Doc.1] seeking a determination that certain unliquidated debts owed by the Debtors, Kenneth Ray Anderson and Linda Carol Anderson, are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). The Plaintiffs' claims arise out of a Tennessee state court default judgment. The Plaintiffs' have now filed their Motion for Summary Judgment [AP Doc. 6] seeking collateral estoppel effect for a Tennessee state court order on the issue of nondischargeability under § 523(a)(2)(A).

After consideration of the briefs, arguments of counsel and the record, it is determined that there are no genuine issues of material fact and the Plaintiffs are entitled to summary judgment as a matter of law.[1]

---

[1] Plaintiffs' counsel also argued that summary judgment was appropriate because the Debtors' did not refute the Plaintiff's affidavit and exhibits [AP Docs. 6-1 and 6-2] with any responsive affidavit or other evidence. There is no need to address this contention because summary judgment is appropriate based on the Plaintiffs' collateral estoppel argument.

I.      PROCEDURAL HISTORY AND FACTS.

The Plaintiffs and several other individuals not parties to this adversary proceeding filed a civil action against the Debtors and others in the Circuit Court for the 7th Judicial District for the State of Tennessee (Case No. B1LA0118) on April 1, 2011 (the "State Court Complaint"). [AP Doc. 1, Ex. A]. The Tennessee lawsuit arose from a series of real estate sales in a residential community known as the Village of Arcadian Springs in Andersonville, Tennessee, that was developed by the Debtors. The plaintiffs therein set forth a wide variety of claims, including allegations of fraud, misrepresentation and deceit.[2] [AP Doc. 1, Ex. A] The Plaintiffs' alleged they were fraudulently induced to purchase two waterfront lots by the Debtors' misrepresentations regarding plans for construction of a large lake and other promised amenities that were never completed. [AP Doc. 1, pp. 1-2]

The Debtors took eight months to answer the State Court Complaint and repeatedly refused to comply with the state court's orders that they participate in discovery. [AP Doc. 1, Ex. B, ¶¶ 7-23] On April 2, 2012, a year after the Plaintiffs' State Court Complaint was filed, the Tennessee state court "heard extensive argument of counsel" regarding "the Plaintiffs' Third Rule 37 Motion to Compel; the Plaintiffs' Motion for Sanctions; the Plaintiffs' Motion for the Entering of a Default Judgment; and the Plaintiffs' Motion to Dismiss." [AP Doc. 1, Ex. B, p. 1] On May 21, 2012, the Tennessee state court granted the Plaintiffs' motion for default judgment pursuant to Tenn. R. Civ. P. 37.02(C) (the "State Court Judgment"). [AP Doc. 1, Ex. B]

---

[2] A copy of the Plaintiffs' State Court Complaint was attached as Exhibit A to their Adversary Complaint. [AP Doc. 1, Ex. A] In addition to their allegations of fraud, misrepresentation and deceit, the State Court Complaint set forth claims for negligence, conversion, negligent and intentional infliction of emotional distress, outrageous conduct, breach of contract and breach of warranty and statutory claims under the Tennessee Consumer Protection Act and the Fair Debt Collection Practices Act. [AP Doc. 1, Ex. A]

The State Court Judgment made findings that recognized the Debtors' repeated refusals to comply with court orders regarding discovery. [AP Doc. 1, Ex. B, ¶¶ 7-23]. The Judgment then decreed:

a. The Answer that was filed by the above-named Anderson Defendants, is hereby stricken from the record;

b. The Plaintiffs are entitled to a Judgment pursuant to the allegations set forth in their Complaint including the Anderson Defendants' violation of the Tennessee Consumer Protection Act codified at T.C.A. 47-18-101, *et seq.* and that the Anderson Defendants have committed the following torts: negligence; misrepresentation; fraud; conversion; negligent and intentional infliction of emotional distress; outrageous conduct; and deceit, and that the Anderson Defendants have violated the various warranties that were provided unto the Plaintiffs. This court specifically holds that the Plaintiffs are entitled to a Default Judgment on the above-stated grounds, and that a hearing will be set to determine the exact amount of compensatory damages and punitive damages which the Plaintiffs are entitled to receive as a result of a Default Judgment being entered; … .

[AP Doc. 1, Ex. B, ¶ 24].

The Debtors filed their Chapter 7 bankruptcy petition just days before the Tennessee state court was scheduled to hold a hearing to determine the damages stemming from the State Court Judgment. The Plaintiffs filed this adversary proceeding alleging that the judgment debts owed to them for their claims of fraud, misrepresentation, deceit and intentional infliction of emotional distress are nondischargeable in bankruptcy. [AP Doc. 1] The Debtors filed their Answer denying the nondischargeability of the debts. [AP Doc. 5]

The Summary Judgment Motion attaches the Affidavit of Plaintiff James Fisher [AP Doc. 6-1, pp. 1-5], which recounts the factual basis underlying the Plaintiffs' claims. The Fisher Affidavit is supported by the following exhibits:

(A)   State Court Complaint, filed April 1, 2011 [AP Doc. 6-1, pp. 6-19];

(B)   State Court Judgment, filed May 21, 2012 [AP Doc. 6-2, pp. 1-8];[3]
(C)   November 5, 2012 letter to Plaintiffs from their state court counsel regarding damages hearing scheduled for April 2, 2013 [AP Doc. 6-2, p. 9];
(D)   December 2, 2005 e-mail containing an article describing development plans for the Village of Arcadian Springs [AP Doc. 6-2, pp. 10-12];
(E)   Map of the Village of Arcadian Springs, provided by the Debtors [AP Doc. 6-2, p. 13];
(F)   Map of the Village of Arcadian Springs, provided by the Debtors [AP Doc. 6-2, p. 14];
(G)   Plat map of the Plaintiffs' property and surroundings [AP Doc. 6-2, pp. 15-16]; and
(H)   December 28, 2005 Deed for the Plaintiffs' purchase of two lots [AP Doc. 6-2, pp. 17-18].

The Plaintiffs filed their Memorandum in Support of Motion for Summary Judgment [AP Doc. 9], the Debtors filed their Response [AP Doc. 11] and the Plaintiffs filed their Reply Memorandum [AP Doc. 12]. Oral argument was held on December 18, 2013, and the matter is now submitted for a decision.

## II.   DISCUSSION.

### A. Summary Judgment Is Appropriate Because There Are No Genuine Issues of Material Fact.

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." *See* Fed. R. Bankr. P. 7056 (incorporating by reference Fed. R. Civ. P. 56). The movant bears the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The Court's task is not "to weigh the evidence and determine the truth

---

[3] The sixth page of the State Court Judgment is missing from this portion of the record. A complete copy of the judgment was attached to the Plaintiffs' Adversary Complaint. [AP Doc. 1, Ex. B]

of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Based on the materials filed, including copies of both the State Court Complaint and State Court Judgment, there are no genuine issues of material fact that require a trial for claims covered by § 523(a)(2)(A).

> **B. Full Faith and Credit Requires that this Court Give Collateral Estoppel Effect to the State Court Judgment to the Same Extent it Would Receive Preclusive Effect Under Tennessee Law.**
>
> > **1. The Doctrine of Collateral Estoppel Prevents Relitigation of the Same Issues in a § 523(a) Action.**

The Plaintiffs argue that the doctrine of collateral estoppel requires a determination of nondischargeability pursuant to § 523(a)(2)(A) based on the State Court Judgment finding for them on their claims of fraud, misrepresentation and deceit. "The doctrine of collateral estoppel 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 461 (6th Cir.1992). "[T]he whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336 n.23, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

Full faith and credit applies to state court orders, including those based on default, in a dischargeability action. A "determination of the collateral estoppel effect of a state court default judgment in bankruptcy dischargeability proceedings begins with the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires the federal courts to give full faith and credit to the judicial proceedings of state courts." *Bay Area Factors, a Div. of Dimmitt & Owens Fin., Inc. v.*

*Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997); *see also Rally Hill Prods. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995) (recognizing that "[t]he doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a)." (citing *Grogan v. Garner (In re Garner)*, 498 U.S. 279, 284 n.11, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991))).

### 2. Collateral Estoppel Applies if the State Court Would Grant Preclusive Effect.

A federal court will grant collateral estoppel effect to a state court judgment "if a state court judgment would receive preclusive effect in the state where it was rendered." *Bursack*, 65 F.3d at 53 (citing *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 386, 84 L.Ed. 2d 274, 105 S. Ct. 1327 (1985)). The Sixth Circuit explained:

> If the state court would not give preclusive effect to a default judgment, the analysis is complete. If, however, the state would accord the judgment preclusive effect, *Marrese* instructs that the federal court give preclusive effect to the judgment unless Congress has expressly or impliedly created an exception to § 1738 which ought to apply to the facts before the federal court.

*Calvert*, 105 F.3d at 317.

Congress has not expressly or impliedly created any exception to the full faith and credit statute, 28 U.S.C. § 1738, for proceedings to determine dischargeability in bankruptcy. *See Bursack*, 65 F.3d at 55; *see also Calvert*, 105 F.3d at 320-21 (finding no exception to § 1738 in the case of a true default judgment where debtor elected not to defend a suit in state court); *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798 (9th Cir. 1995) (holding that a Florida state court default judgment for fraud precluded relitigation of the fraud issue on a claim of nondischargeability).

Therefore, the State Court Judgment will have collateral estoppel effect in this proceeding if a Tennessee state court would recognize the preclusive effect of that judgment.

> 3. **Tennessee Courts Grant Preclusive Effect if Certain Conditions Are Satisfied.**

Tennessee law provides that "collateral estoppel bars relitigation of an issue if it was raised in an earlier case between the same parties, actually litigated, and necessary to the judgment of the earlier case."  *See Bursack*, 65 F.3d at 54 (citing *Massengill v. Scott,* 738 S.W.2d 629, 632 (Tenn. 1987)).  The following analysis confirms the claims that are the subject of the Summary Judgment Motion were raised and actually litigated in the Tennessee state court, resulting in the State Court Judgment.  Further, adjudication of those claims was necessary to the State Court Judgment.

### C. The State Court Judgment Is Entitled to Collateral Estoppel Effect Requiring a Determination that the Fraud Claims Are Nondischargeable.

The State Court Judgment found for the Plaintiffs on their allegations of negligence, misrepresentation, fraud, conversion, negligent and intentional infliction of emotional distress, outrageous conduct and deceit.  [AP Doc. 1, Ex. B, ¶ 24].  *See also supra* at Section I.  The Summary Judgment Motion only deals with the dischargeability of the judgment debts for fraud, misrepresentation and deceit pursuant to § 523(a)(2)(A).  The Plaintiffs' claim that the judgment for intentional infliction of emotional distress is nondischargeable under § 523(a)(6) is not addressed by the Summary Judgment Motion.

> 1. **The State Court Judgment Addressed the Same Types of Claims Covered by this § 523(a)(2)(A) Action.**
>
>> a. **A Creditor Seeking a Determination of Nondischargeability Must Prove the Elements Required by § 523(a)(2)(A).**

A debt may be excepted from discharge in bankruptcy if it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).  This Court previously explained:

7

> To except a debt from discharge under section 523(a)(2)(A), a creditor must prove each of the following elements by a preponderance of the evidence:
>
> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
> (2) the debtor intended to deceive the creditor;
> (3) the creditor justifiably relied on the false representation; and
> (4) its reliance was the proximate cause of loss.
>
> "Whether a debtor possessed an intent to defraud a creditor within the scope of § 523(a)(2)(A) is measured by a subjective standard."

*Peoples Exchange Bank v. Taylor (In re Taylor)*, No. 10-50039, Adv. No. 10-5036, 2011 WL 841511, at *3 (Bankr. E.D. Ky. Mar. 4, 2011) (citing *Rembert v. AT&T Universal Card Svcs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998)).

It is necessary to determine if the Plaintiffs' state law claims for fraud, misrepresentation and deceit address these same elements.

### b. The Elements Underlying the Plaintiffs' State Court Claims for Fraud Are Consistent with Those Required to Prove Nondischargeability Under 11 U.S.C. § 523(a)(2)(A).

Under Tennessee law, a claimant must prove the following elements to sustain a cause of action for fraud:

(1) an intentional misrepresentation with regard to a material fact,
(2) knowledge of the representation['s] falsity—that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity,
(3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and
(4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise."

*Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (formatting altered) (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

A comparison of these elements to the elements required for a nondischargeable claim under § 523(a)(2)(A) listed in the prior section shows they are the same. The Tennessee bankruptcy court in the *Bursack* case discussed supra at Section II.A reached the same conclusion: "[T]he elements necessary to prove state fraud are virtually identical to those required for a fraud finding under § 523(a)(2)." *Rally Hill Prods. v. Bursack (In re Bursack)*, 163 B.R. 302, 305 (Bankr. M.D. Tenn. 1994); *see also Trupoint Bank v. Clark (In re Clark)*, 08-50899, 2009 WL 693164, *2 (Bankr. E.D. Tenn. Mar. 11, 2009). Further, on appeal, the Sixth Circuit described the debtor's contrary argument as "entirely without merit." *Bursack*, 65 F.3d at 55.

Judgment on the misrepresentation and deceit claims also calls to mind the elements of § 523(a)(2). *See Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995) (fraud and deceit is one of three distinct actions in tort based on misrepresentation (citing *Jasper Aviation, Inc. v. McCollum Aviation, Inc.,* 497 S.W.2d 240, 242–43 (Tenn. 1972)); *see also John Martin Co. v. Morse/Diesel, Inc.,* 819 S.W.2d 428, 433 (Tenn. 1991) (same). Although separately pled in the Plaintiffs' State Court Complaint and listed in the State Court Judgment, these claims are essentially akin to a single cause of action for fraud. *See* Shahrdar, 983 S.W.2d at 237.

In *Shahrdar*, the court held:

> [B]oth the trial court and this Court have discussed the related concepts of intentional misrepresentation and promissory fraud as if they were two distinct causes of action available to the Plaintiff. However, it is more correct to think of intentional misrepresentation as a necessary element of a fraud claim, while promissory fraud is a type of fraud perpetrated by means of a false promise of future action.

*Id.*

Thus, the Plaintiffs have established that there is an identity of the issues between their state court claims for fraud, including misrepresentation and deceit (hereafter, these are referred to as the fraud claims), and their nondischargeability claim under § 523(a)(2)(A). It is also necessary to determine if these common elements were adequately addressed by the State Court Judgment such that collateral estoppel may apply.

### c. The Factual Allegations of the Plaintiffs' Tennessee Complaint Are Sufficient to Support a Cause of Action for Fraud Under Tennessee Law.

The State Court Judgment did not make extensive findings of fact; it declared that the Plaintiffs were entitled to judgment on their fraud claims "pursuant to the allegations set forth in their Complaint." *See supra* at Section I. Therefore, it is necessary to examine the allegations set forth in the Tennessee State Court Complaint to confirm the State Court Judgment addresses the required elements.

The essential elements of the Plaintiff's state law fraud claims are easily identified from the State Court Complaint. The Plaintiffs' alleged that the Debtors knowingly made material misrepresentations regarding the approval of plans for the construction of a lake adjacent to their property to induce purchase of the two waterfront lots in paragraphs 9, 10 and 24 of the State Court Complaint. [AP Doc. 6-1, pp. 10-11, 14]. The Plaintiffs also specifically asserted that they suffered damage as a result of their reliance on the Debtors' misrepresentations in paragraphs 11, 12 and 30. [AP Doc. 6-1, pp. 11, 15-16]. Further, the Plaintiffs' alleged the Debtors never obtained approval for the lake's construction in paragraphs 27 and 28, thus describing misrepresentations based on existing or past facts. [AP Doc. 6-1, p. 15].

The decision that the Debtors committed the torts of fraud, misrepresentation and deceit is adequately supported by the allegations in the State Court Complaint. Therefore, the State

Court Judgment addressed the elements required for a nondischargeability action under § 523(a)(2)(A).

### 2. The Fraud Claims Were Actually Litigated in the Tennessee State Court.

#### a. Tennessee State Court's Grant Collateral Estoppel Effect to Default Judgments.

The actually litigated requirement is more difficult to analyze when the state court judgment is based on default. But a Tennessee state court will give a default judgment preclusive effect. Consider:

> Even a default judgment satisfies Tennessee's "actually litigated" requirement:
>
>> A judgment taken by default is conclusive by way of estoppel in respect to all such matters and facts as are well pleaded and properly raised, and material to the case made by declaration or other pleadings, and such issues cannot be relitigated in any subsequent action between the parties and their privies.

*Bursack*, 65 F.3d at 54 (quoting *Lawhorn v. Wellford*, 179 Tenn. 625, 168 S.W.2d 790, 792 (1943)).

#### b. The Fraud Claims Were Actually Litigated.

Despite *Bursack*, the Debtors argue that the State Court Judgment was not actually litigated because it was a default judgment based on the Debtors' discovery and other abuses. [AP Doc. 11] The Debtors rely exclusively on the Sixth Circuit's decision in *Spilman v. Harley (In re Harley)* to support their argument. 656 F.2d 224 (6th Cir. 1981) The Sixth Circuit in *Spilman* wrote: "If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court." *Id.* at 228. The Debtors claim that *Spilman* "squarely forecloses" granting collateral estoppel effect to the State Court Judgment, suggesting that *Spilman* sets forth a bright-

line rule that default judgments can never have preclusive effect in bankruptcy proceedings. [AP Doc. 11, p. 2]

This conclusion from *Spilman* is probably no longer good law, although it has not been expressly overruled. *See Calvert*, 105 F.3d at 319; *Bursack*, 65 F.3d at 54. In *Bursack*, the Sixth Circuit recognized that *Spilman* fails to explain why a default judgment should not receive the full faith and credit required by 28 U.S.C. § 1738 for another state's judicial proceedings. *Bursack*, 65 F.3d at 54. The court also noted that later Supreme Court opinions dealing with full faith and credit issues further called into question *Spilman*'s broad comments regarding default judgments. *Id.* (referencing *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985); *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 80, 104 S.Ct. 892, 895–96, 79 L.Ed.2d 56 (1984)).

The Sixth Circuit backed off further in *Calvert*, noting that *Spilman's* pronouncement regarding default judgments was merely dicta and that "*Spilman* was decided before the Supreme Court in *Marrese* instructed federal courts to use the preclusion principles of the state where the judgment was entered and not to apply their own rules of preclusion." *Calvert*, 105 F.3d at 319. Like *Bursack* and *Calvert*, *Spilman* is not controlling.

In fact, given the Debtors' involvement in the Tennessee proceeding, this case is similar to the facts of *Bursack*, which involved a default judgment that was entered after a litigant made a "strategic decision not to appear at trial." The court explained the facts in *Bursack*:

> The issues were actually litigated to the extent that Bursack retained an attorney, filed an answer, asserted cross-claims, and participated in discovery, which included his submitting to two depositions. In fact, Bursack's counsel conceded at oral argument that Bursack "had vigorously litigated the case and defended the case up until the eve of trial."

*Id.*

Similarly, the facts in this case show considerable participation by the Debtors in the Tennessee state court. Prior to the entry of the default judgment, the Debtors hired an attorney, filed an answer and filed a counter-complaint against the state court plaintiffs. The Debtors' repeated refusals to obey court orders regarding discovery evidenced a voluntary decision not to participate the same as in *Bursack*. Further, merely because the State Court Judgment arose from a sanction for discovery abuses does not mean the matter was not actually litigated.

First, the Debtors suggest in their Answer that the default judgment in state court was "due to the negligence of Defendants' counsel of record." [AP Doc. 5, ¶ 2] The State Court Judgment does not bear this out. Even after their counsel explained the discovery obligations, the Debtors' still refused to comply. *See* AP Doc. 1, Ex. B, ¶ 20 ( "This Honorable Court took Judicial notice of previous statements by counsel for the Defendants that he had instructed the various Anderson Defendants to respond to the Interrogatories and Request for Production of Documents.").

Second, bankruptcy courts in other circuits have "given collateral estoppel effect in bankruptcy dischargeability proceedings to prior penalty default judgments, that is, default judgments entered as a sanction." *Sterling Factors, Inc. v. Whelan (In re Whelan)*, 236 B.R. 495, 507-08 (Bankr. N.D. Ga. 1999), *modified sub nom. Sterling Factors, Inc. v. Whelan (In re Whelan)*, 245 B.R. 698 (N.D. Ga. 2000) (citations omitted). In a bankruptcy dischargeability case considering the preclusive effect of a penalty default judgment in federal court, the Eleventh Circuit noted:

> Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion for a district court to apply the doctrine of collateral

> estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action.

*Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1325 (11th Cir.1995) (holding that a penalty judgment met the "actually litigated" requirement) (internal footnote omitted).

Third, the Sixth Circuit in *Calvert* granted preclusive effect to a true default judgment resulting from a debtor's failure to defend a state court case in California.[4] The Debtors' argument that the fraud issues were never "actually litigated" is unpersuasive under these circumstances. Having allowed their case to proceed to default judgment, the Debtors may not now argue that they were never given the opportunity to contest the Plaintiffs' claims of fraud.

### 3. The Fraud Claims Were Necessary to the State Court Judgment.

The final condition for application of collateral estoppel in Tennessee is confirmation that the facts necessary for the determination of the current issue were necessary to the conclusion on the prior state court judgment. This condition avoids both the unfairness of forcing state court litigants to contemplate potential bankruptcy issues in each case and the burden on state courts to address unnecessary facts.

This opinion already determined that the Plaintiffs' State Court Complaint set forth adequate facts to support a judgment on the state court fraud claims under Tennessee law. *See* Section II.C.1.c. These fraud claims were at the core of the Plaintiffs' state court suit against the Debtors and emanated from a common nucleus of fact, *i.e.*, the Plaintiffs were fraudulently induced to purchase real estate based on the Debtors' material misrepresentations regarding the future development. Thus, the facts necessary for a dischargability action were also necessary to the State Court Judgment.

---

[4] California and Tennessee law appear consistent on the preclusive effect afforded to default judgments under the laws of California and Tennessee. *See Calvert*, 105 F.3d at 318 and *Bursack*, 65 F.3d at 54.

### III.  CONCLUSION

Collateral estoppel applies to the non-dischargeability issues in this case based on the State Court Judgment.  The Plaintiffs proved that the fraud claims covered by the State Court Judgment were identical to those relevant under § 523(a)(2)(A), actually litigated and necessary for the result.  Therefore, the state court fraud claims are nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A).  Accordingly, the motion for summary judgment filed by the Plaintiffs [AP Doc. 6] is GRANTED.  A separate order will follow.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge
Dated: Friday, January 10, 2014
(grs)**